IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EARL WILBERT | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-13-1843 |
| | § | |
| CAROLYN W COLVIN, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION,[1] | § | |
| | § | |
| Defendant. | § | |
| | § | |

**MEMORANDUM AND ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Magistrate Judge[2] in this social security appeal are the Plaintiff's Motion for Summary Judgment (Document 18) and Defendant's Motion for Summary Judgment (Document 15). Having considered the motions, the administrative record, and the applicable law, the Court ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment is GRANTED, Plaintiff's Motion for Summary Judgment is DENIED, and that the decision of the Commissioner be AFFIRMED for further proceedings.

**I.    Introduction**

Plaintiff Earl Wilbert ("Wilbert") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405 (g), seeking judicial review of final decision of the

---

[1] Carolyn W. Colvin became the acting commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25 (d) of the Federal Rules of Court Procedure, she is substituted for Michael J. Astrue as the defendant in this action.
[2] On 9-19-13, pursuant to the parties' consent, this case was transferred by the District Judge to the Undersigned Magistrate Judge for all further proceedings (Document 12).

1

Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 423, and supplemental security income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1382c. Wilbert argues that the Administrative Law Judge's ("ALJ"): (1) residual functional capacity (RFC) finding was not supported by substantial evidence and (2) the ALJ erred in failing to find plaintiff's neck impairment to be severe. As a result, Wilbert argues he was prejudiced by this legal error. In contrast, the Commissioner argues substantial evidence supports the ALJ's decision and that the decision comports with applicable law and should be affirmed. The Commissioner contends that the ALJ properly determined that Wilbert had the residual functional capacity to perform light level work, limited to the extent that he could occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; and could never climb ropes, ladders, or scaffolding. Because of this finding, the ALJ found that Wilbert retained the ability to perform his past relevant work as a home healthcare worker and was not disabled within the meaning of this Act.

## II.   Administrative Proceedings

On August 11, 2011, Wilbert filed a Title II application for a period of disability and disability insurance benefit. Wilbert also filed a Title XVI application for supplemental security income on August 18, 2011. In both applications, Wilbert alleged disability beginning April 2, 2009 (TR 116), which was later amended to May 4, 2010. (TR 17, 31). His complaints included back pain due to a gunshot wound to his lower back with occasional shooting pains down his leg, neck pain that has been ongoing for 15 years without specific injury, and breathing problems for the last year or so. (TR 210, 211). These disability claims were denied initially on October 24, 2011, and again upon reconsideration on January 23, 2012. (TR 17). Wilbert filed a written

request for a hearing on January 23, 2012. The hearing was held on September 6, 2012, in Houston, TX. (TR 29-45). Wallace A. Stanfill, an impartial vocational expert, also appeared at the hearing. (TR 41 – 45). The ALJ issued a decision on September 10, 2012. Both Wilbert and the Commissioner have filed Motions for Summary Judgment. (Document Nos. 18 & 15). This appeal is now ripe for ruling.

### III. Standard of Review

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F. 3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district courts the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405 (g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues *de novo*, nor substitute its judgment" for that of the Commissioner even if the evidence preponderates against the Commissioner's decision. *Chaparro v. Bowen*, 815 F.2d 1008, 1009 (5th Cir. 1987); *see also Jones*, 174 F.3d at 693; *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) (quoting *Hemphill v. Weinberger*, 483 F. 2d 1127 (5th Cir. 1973)).

3

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

## IV.     Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such exists in the immediate area in which [he] lives, or whether a specific job vacancy exists for [him], or whether [he] would be hired if [he] applied for work.

42 U.S.C § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of

4

engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d at 293 (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five step sequential process to determine disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe" impairment or combination of impairments, he will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience, and residual functional capacity, she will be found disabled.

*Anthony*, 954 F.2d at 293; see also *Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner demonstrates that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 564.

V. **Discussion**

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of

5

treating, examining and consultative physicians on subsidiary questions of fact; (3) subjective evidence as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history, and present age. *Wren*, 925 F.2d at 126.

## A. Objective Medical Evidence

As testified to by Wilbert, because he did not have a Gold Card, he did not have the financial means to pursue medical treatment and as a result, there are few treating records. Because of the sparse record, Wilbert was referred for two consultative examinations. The purpose of each examination was to evaluate Wilbert's allegations that he was disabled due to back pain, right leg pain, neck pain and chest pain.

The first evaluation was performed by Dr. Orlando Terneny on May 5, 2010. In connection with this examination, Wilbert had an EKG. The EKG was normal. (Tr. 208). He also had x-rays taken of the lumbar spine. (Tr. 209). The radiologist noted that there was "no significant abnormality of alignment." (Tr. 209). Dr. Terneny also sought information from Wilbert about his complaints. Wilbert reported that for the past five years he has experienced back pain. Wilbert stated he had never had surgery, and was not taking any pain medication. He estimated that he could walk three blocks, stand still approximately thirty to forty minutes, could sit for an hour, lift 30 pounds, bend, squat, and walk on his tiptoes or heels. According to Wilbert, he was able to walk without an assistive device. Wilbert reported being able to do housework, go to the grocery, cook and do laundry. As for his neck pain, Wilbert reported a history of neck pain when bending. He also complains of right leg pain and chest pain. The results of Wilbert's physical examination show in pertinent part;

> Neck: Range of motion decreased with pain mostly in extension as well as right and left flexion and right and left bending. No lymphomegaly. No thyromegaly. No carotid bruits.

Lungs: On percussion normal. On auscultation, few coarse rales and few rhonci scattered mostly in the middle zones.

Cardiac: Heart with the apical impulse located in the fifth left intercostal space. First and second sounds normal. No murmurs. No gallops. No thrills. No rubs. Jugular venous pressure normal.

Back: Shows tenderness in the cervical spine as well as the lumbar spine with no significant paraspinal spasm or straightening of lordotic curvature.

Extremities: Show no clubbing, cyanosis, or edema. No atrophy and no deformity.

Musculoskeletal: The patient has a normal gait and station. Can walk on toes and heels, can bend, and can squat without any difficulty. He can jump and tandem walk without any difficulty. The patient has pain and crunching sensation in both knees, more severe in the left than in the right as well as in the neck as well as in the lower back. The patient is able to get on and off the examining table without any difficulty.

Neurological: Cranial nerves are intact. The deep tendon reflexes are brisk and symmetrical in the upper and lower extremities. Sensory examination to light touch, pinprick and position was slightly decreased in the right leg mostly in the lateral aspect. Cerebellar function was intact. The muscle strength was 5/5 in all groups tested. No evidence of muscular wasting. The patient has good fine finger control to dexterous movement and the straight leg test in the right is 80 and in the left is 45 with weakness of 4/5 in the left side. (Tr. 203-304).

Based on the above, Dr. Terneny opined that Wilbert had chronic low back pain. (Tr. 204). Dr. Terneny attributed this to degenerative joint disease of the lumbar spine but noted that there was no evidence of radiculopathy. As to Wilbert's complaints of right leg pain, Dr. Terneny noted that the pain likely was due to an earlier gunshot but had caused no motor weakness. As for Wilbert's complainants of neck pain, Dr. Terneny wrote that the pain was evidence of his degenerative joint disease and that his complaints of chest pain were consistent with "periaortic episode of costochondritis." (Tr. 204).

The second consultative examination was performed by Dr. John E. Norris on September

7

26, 2011. (Tr. 210-216). In connection the examination, a chest x-ray was taken, which was normal. Wilbert reported to Dr. Norris that he has had back pain since he sustained a gunshot wound to his lower back in 1988. Wilbert described the pain as localized in his lower back and that the pain radiates down his left leg. Wilbert estimated that he could walk two blocks or more and requires no assistive device to ambulate. Wilbert further reported that he occasionally wears a back brace. As for his neck injury, Wilbert stated he has experienced neck pain for approximately 15 years but has required no special treatment and has not interfered with his sleep. As for his complaints of left leg pain, Wilbert reported the pain started after being shot in 1988 and like his neck, has required no special treatment and he has never been told that anything was wrong with his leg. As for his breathing problems, Wilbert reported shortness of breath on exertion. Wilbert reports that his daily activities include cutting the grass, washing dishes, driving, going to grocery and church. He walks daily. Wilbert reported taking no pain medication.

The results of Dr. Norris' examination reveal that Wilbert had a slight limitation of motion. (Tr. 211). Dr. Norris measured the range of motion in Wilbert's shoulder, elbow, wrist, hip, cervical spine, and lumbar spine. (Tr. 215-216). No limitations were noted in his hip, cervical spine, wrist, elbow or shoulder. The examination further revealed:

> Extremities: Revealed no edema. There was normal range of motion of all peripheral joints. There were no joint effusions or instabilities. First was 100% and the grip was strong. Arm strength 5/5, leg strength 5/5 on the right, 4/5 on the left.
>
> Musculoskeletal: Revealed he got up out of his chair and walked around the room easily without a limp. He had difficulty walking on his tiptoes because of painful left leg. He had good dexterous finger control. No atrophy was noted.
>
> Neurological: Reveals straight leg raising 70 degrees on the right, 50 degrees on the left, both supine and seated. Cranial nerves are intact. Deep tendon reflexes are 1+ and equal bilaterally. (Tr. 211-212).

Based on the results of the physical examination along with x-rays, Dr. Norris addressed each of Wilbert's complaints. With respect to his clinical impression, Dr. Norris wrote:

1. Arthritis in back with limitation of motion.

2. Arthritis of neck with a normal range of motion, even though performed slowly.

3. Painful left leg ever since a gunshot wound three years ago. Exact etiology not clear. Sensory exam of the left leg not remarkable.

4. Breathing problems for the last year or two, meaning shortness of breath. Auscultation of the lungs shows no abnormality. The reason for this is not clear. (Tr. 212)

Lastly, a DDS physician, Dr. Scott Spoor, reviewed Wilbert's record, and completed a Physical Residual Functional Capacity Assessment based on his diagnosis of arthritis. (Tr. 217-224). Dr. Spoor opined that Wilbert had no postural, manipulative, visual, communicative or environmental limitations due to arthritis. As for exertional limitations, Dr. Spoor opined that Wilbert could occasionally lift and/or carry 50 pounds; could frequently lift and/or carry 25 pounds; could stand and/or walk about 6 hours in an 8-hour workday; could six (with normal breaks) about 6 hours in an 8 hour workday; and was unlimited in his ability to push and/or pull. The record shows that Dr. John Dufor agreed with Dr. Spoor's RFC determination. (Tr. 225).

Wilbert argues that the ALJ's consideration of his alleged neck pain is flawed. According to Wilbert, the ALJ failed to find his neck pain to be a "severe impairment" at step two. Wilbert argues that because he cannot look up, his alleged neck impairment interfered with his ability to work. In addition, Wilbert challenges the ALJ's RFC determination because it does not take into account his neck impairment.

9

At step two, the claimant bears the burden of showing that he has a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. The step two requirement that the claimant have a severe impairment is generally considered to be "a *de minimis* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Eckert*, 482 U.S. 137, 153-154 (1987)). "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)). Because the regulations require a claimant to show only "*a* severe impairment," that is, *one* severe impairment in order to avoid a denial of benefits at step two, the failure to find a particular impairment severe at step two is not reversible in and of itself as long as the ALJ finds that at least one other impairment is severe. However, even if an impairment is found non-severe at step two, the ALJ must still "consider the limiting effects of all [a claimant's] impairment(s), even those that are not severe in determining [RFC]." 20 C.F.R. §§ 404.1545(e), 416.945(e); *see also* 20 C.F.R. § 404.1523; Social Security Ruling 96-8p, 1996 WL 374184, at *5; *Loza v. Apfel*, 219 F.3d 378, 393 (5 Cir. 2000) (The ALJ must "consider the combined effects of all the impairments, without regard to whether any such impairment, if considered separately, would be of sufficient severity."). Moreover, even if the ALJ could be said to have erred at step two in his severity determination, such an error may be considered harmless. An error is harmless if it does not "affect the substantial rights of a party," *Taylor v. Astrue*, 706 F.3d 600, 603 (5 Cir. 2012), or when it "is inconceivable that the ALJ would have reached a different conclusion" absent the error. *Frank v. Barnhard*, 326 F.3d 618, 622 (5th Cir.

2003); *Bornette v. Barhnart*, 466 F.Supp.2d 811, 816 (E.D.Tex. 2006) ("Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error.").

Here, the ALJ determined that Wilbert had the following severe impairments: arthritis, lumbar degenerative disease, and shortness of breath. Wilbert argues that the ALJ's failure to specifically mention his neck suggests that it was not considered by the ALJ as a severe impairment. The two consultative examinations that were relied on by the ALJ show that both physicians, Drs. Terneny and Norris, considered Wilbert's complaints of neck pain. For example, Dr. Terneny attributed Wilbert's neck complaints to his degenerative joint disease. Dr. Norris characterized it as arthritis. Both arthritis and lumbar degenerative disease, which impliedly included his neck, were found by the ALJ to be severe impairments. Because the ALJ progressed beyond step two and considered all limitations supported by the record, to the extent there was a step two error it was harmless. *See e.g., Gibbons v. Colvin*, No. 3:12-CV-0427-BH, 2013 WL 1293902 *16 (N.D.Tex. 2013) (any error at step two in assessing the claimant's mental impairment was harmless); *Reliford v. Colvin*, No. H-12-1850, 2013 WL 1787650 *13 (S.D.Tex. 2013) ("even if the ALJ's failure to make a specific severity finding with regard to foot pain was an error, it was harmless because he considered related limitations at subsequent steps of the disability analysis"); *Garcia v. Astrue*, No. M.-08-264, 2012 WL 13716 (S.D.Tex. 2012)(even if the ALJ erred at step two in failing to address the severity of the claimant's right leg venous thrombosis, that error was harmless because the ALJ considered all the claimant's limitations in determining his RFC, and decided the case at step five); *Abra v. Colvin*, No. 3:12-Cv-1632-BN, 2013 WL 5178151, at *4 (N.D.Tex. Sept. 16, 2013); *Gibbons v. Colvin*, No. 3:12-CV-0427-BH, 2013 WL 1293902, at *14 (N.D.Tex. Mar. 30, 2013).

Upon this record, substantial evidence supports the ALJ's step two and three determination that Wilbert's arthritis, lumbar degenerative disease, and shortness of breath were severe impairments but that none, either singly or in combination met a listing. In addition, substantial evidence supports the ALJ's finding that Wilbert retained the RFC for a limited range of light work. To the extent that Wilbert argues that the RFC should have included a restriction that Wilbert not look up, Dr. Norris noted that Wilbert had a full range of motion in his neck. Further, the determination of a claimant's RFC is the sole responsibility of the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). The ALJ's RFC determination is consistent with Dr. Terneny, Dr. Norris's and Dr. Spoor's evaluations. The ALJ, based on the totality of the evidence, concluded that Wilbert could perform light work restricted to the extent that he could occasionally climb stairs, balance, stoop, kneel, crouch and crawl; and could never climb ropes, ladders or scaffolding. The ALJ gave specific reasons in support of this determination. This factor weighs in favor of the ALJ's decision.

**B.     Diagnosis and Expert Opinion**

The second factor when considering whether substantial evidence supports the ALJ's decision is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. Unless good cause is shown to the contrary, "the opinion, diagnosis, and medical evidence of the treating physician, especially when the consultation has been over a considerable length of time, should be accorded considerable weight." *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981). For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusional and must be supported by clinical and laboratory finding. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981). Indeed, "a treating physician's opinion on the nature and severity of a

patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (quoting *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)). The opinion of a medical specialist is generally accorded more weight than opinions of non-specialists. Id. "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Martinez*, 64 F.3d at 176 (quoting *Bradley v., Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). Further, regardless of the opinions and diagnosis of medical sources, "'the ALJ has sole responsibility for determining a claimant's disability status.'" *Martinez* 64 F.3d at 176 (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir 1990).

While opinions of treating physicians need not be accorded controlling weight on the issue of disability, in most cases such opinions must at least be given considerable deference. *Newton*, 209 F.3d at 456. With regard to the weight to be given "Residual Functional Capacity Assessments and Medical Source Statements," the Rule provides that "adjudicators must weigh medical source statements under the rules set out in 20 C.F.R. 404.1527 ... providing appropriate explanations for accepting or rejecting such opinion." Social Security Ruling (SSR) 96-2p, 61 Fed. Re. 34490 (July 2, 1996).

Though Wilbert testified about his limitations, neither physician noted such limitations based on their observations. Dr. Norris opined that the arthritis of the neck still allowed for a normal range of motion, albeit performed slowly. The X-rays of Wilbert's lumbar spine showed no significant abnormalities and an auscultation of the lungs showed no reason for shortness of breath. (TR 209, 211, 212). Dr. Norris' opinion is consistent with Dr. Terneny's opinion.

With respect to the opinions and diagnosis of treating physicians and medical sources supporting evidence for the ALJ's RFC finding, the ALJ wrote:

> "At the second consultative examination, the claimant reported back and leg issues dating back to a gunshot wound in the late 1980s. However, the claimant worked performing light to medium work after this time. He was very candid at the examinations and at the hearing that he was able to perform his activities of daily living, and he tries to help other people with their needs. He is able to mow grass, drive, grocery shop, cook and do housework. He has been able to work on a part-time basis, and this did not end as a result of his medical conditions. The residual functional capacity assigned is clearly supported by the evidence, and the claimant is able to perform a limited range of light work. No treating doctor has indicated that the claimant is disabled." (TR 22).

The ALJ's decision is a fair summary and characterization of the medical records. The medical opinions of Dr. Terneny, Dr. Norris, Dr. Spoor, and Dr. Durfor support the ALJ's RFC determination. The court concludes that the diagnosis and expert opinions factor also supports the ALJ's decision.

## C.     Subjective Evidence of Pain

The next factor to be weighed is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends. Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled. *Cook*, 750 F.2d at 395. The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423. The statute provides that allegations of pain do not constitute conclusive evidence of disability. There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause pain. Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence on record. 42 U.S.C. § 423. "Pain constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders*, 914 F.2d at 618-19

(citing *Darrell v. Bowen*, 837 F.2d 471, 480 (5th Cir. 1988)). Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able to perform. *See Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994). The Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has had the opportunity to observe the claimant. *Hames*, 707 F.2d at 166.

"It is appropriate for the Court to consider the claimant's daily activities when deciding the claimant's disability status." *Leggett v. Chater*, 67 F.3d 558, 565 n. 12 (5th Cir. 1995). Any "inconsistencies between the [Plaintiff's] testimony about his limitations and his daily activities were quite relevant in evaluating his credibility." *Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir 1990). Here, the ALJ relied on inconsistent statements made by Wilbert regarding his ability to perform. Wilbert stated he was able to perform daily activities such as mowing the yard, washing dishes, going to the grocery store, going to church, and visiting patients in the hospital (TR 21,22, 211) And yet, he testified during his hearing that he could not stand for more than thirty minutes or sit comfortably for thirty minutes due to back, neck and leg pain. (TR 37). Wilbert also testified that he gets off balance and his hands curl up from arthritis. (TR 36).

Also supporting the ALJ's credibility determination is the physician's observations that Wilbert was able to get up out of his chair and walk around without a limp, he had a normal gait and station, can bend, jump, and squat without any difficulty, and was able to get on and off the examination table without difficulty. (TR 203, 211).

The undersigned finds that there is nothing in the record to suggest that the ALJ made improper credibility findings or that the testimony was weighed improperly. The ALJ noted

inconsistencies between Wilbert's testimony and his responses to his daily activities, as well as the observation by Dr. Terneny and Dr. Norris. This factor also supports the ALJ's decision.

### D. Education, Work History, and Age

The final factor to be weighed is the claimant's educational background, work history and present age. A claimant will be determined to be under disability only if the claimant's physical or mental impairments are of such severity that is not unable to do his previous work, but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The record shows that Wilbert, at the time of the hearing, was sixty years old, and had completed high school. The ALJ questioned Wallace Stanfull, a vocational expert ("VE"), at the hearing about Wilbert's ability to engage in gainful work activities. "A vocational expert is called to testify because of his familiarity with job requirements and working conditions. 'The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (quoting *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir 1986)). It is well settled that a vocational expert's testimony, based on a properly phrased hypothetical question, constitutes substantial evidence. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). A hypothetical question is sufficient when it incorporates the impairments which the ALJ has recognized to be supported by the whole record. Beyond the hypothetical question posed by the ALJ, the ALJ must give the claimant the "opportunity to correct deficiencies in the ALJ's hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Bowling*, 36 F.3d at 436.

The ALJ posed the following hypothetical questions to the VE:

Q. For the purposes of a hypothetical question, I'm going to ask you to assume, please, that ... as of the onset, we're dealing with an individual of advanced age, 57; one presently who is 60; one who is a high school graduate; certainly, is literate; has the same vocational background as Mr. Wilbert. Further assume, please, that the hypothetical individual can stand and walk for six out of eight; sit for six out of eight; lift and carry, push and pull an occasional 20, and a frequent 10; could never do ropes, ladders, or scaffolds; all other posturals would be occasional. As to that assessment, if I did agree with it, could such a person of that profile perform any of Mr. Wilbert's past work?

A. Yes, sir. This would be consistent with the past home healthcare job. It would eliminate the medium past jobs.

Q. Thank you, sir. Hypothetical number two would be the same as one, except add to it the additional feature that the hypothetical individual, secondary to the issues ... if we added to hypothetical number one, the feature that the individual would need to recline, and rest for, approximately, two hours out of each eight-hour workday, could such a person sustain employment?

A. No, judge. These jobs would allow for customary break periods, but not two hours during the work day.

Q. All right, sir. And hypothetical number three, assume with me, if you would please, that the hypothetical individual would be limited to secondary work with the same postural restrictions. Do I understand correctly that the hypothetical individual would grid out?

A. Yes (TR 42, 43, 44)

Here, the ALJ relied on a comprehensive hypothetical question to the vocational expert. A hypothetical question is sufficient when it incorporates the impairments which the ALJ has recognized to be supported by the whole. Upon this record, there is an accurate and logical bridge from the evidence to the ALJ's conclusion that Wilbert was not disabled. Based on the testimony of the vocational expert and the medical records, substantial evidence supports the ALJ's finding that Wilbert could perform light work with restrictions and could perform his past relevant work as a home healthcare provider. Because the hypothetical questions contained all the functional limitations recognized by the ALJ, the Court concludes that the ALJ's reliance on

17

the vocational testimony was proper, and that the vocational expert's testimony, along with the medical evidence, constitutes substantial evidence to support the ALJ's conclusion that Wilbert was not disabled within the meaning of the Act and therefore was not entitled to benefits.

## VI. Conclusion

Considering the record as a whole, the Court is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which direct a finding that Wilbert was not disabled within the meaning of the Act, that substantial evidence supports the ALJ's decision, and that the Commissioner's decision should be affirmed. As such, it is

ORDERED Plaintiff's Motion for Summary Judgment (Document No. 18), is DENIED, Defendant's Motion for Summary Judgment (Document No. 15) is GRANTED, and the decision of the Commissioner of Social Security is AFFIRMED.

Signed at Houston, Texas, this 27th day of June, 2014

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE